United States Court of Appeals,

Eleventh Circuit.

No. 94-9387.

UNITED STATES of America, Plaintiff-Appellee,

v.

Neal BROWN, Defendant-Appellant.

July 21, 1997.

Appeal from the United States District Court for the Southern District of Georgia. (No. CR692-010-24), Dudley H. Bowen, Judge.

Before ANDERSON and CARNES, Circuit Judges, and CUDAHY[*], Senior Circuit Judge.

CARNES, Circuit Judge:

This case turns directly upon application of the fundamental principle that to be constitutionally valid, a plea of guilty must be knowingly and voluntarily made. We hold that a guilty plea is not knowingly and voluntarily made when the defendant has been misinformed about the critical elements of the charged offense, even when that misinformation is the result of this Court's erroneous prior interpretation of a criminal statute. More specifically, in light of *Ratzlaf v. United States,* 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), which held that knowledge of illegality is an essential element of the crime of currency structuring, we hold invalid a guilty plea to that crime which was based upon the pre-*Ratzlaf* law of this circuit to the contrary.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

The facts in this case are straightforward. In June 1992, a federal indictment was entered against Neal Brown, accusing him of the following crimes: (1) conspiracy with intent to distribute controlled substances; (2) money laundering; and (3) structuring currency transactions to avoid the reporting requirements of 31 U.S.C. § 5313(a), in violation of 31 U.S.C. § 5324. On November 4, 1992, Brown pleaded guilty to the structuring charge, and the government voluntarily dismissed the other two charges, despite the absence of a formal plea agreement. Thereafter, Brown was sentenced

[*]The Honorable Richard D. Cudahy, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

to nine months of imprisonment followed by three years of supervised release.

At his plea colloquy, Brown and his counsel explained to the court Brown's decision to plead guilty:

> Q. [By the Court.]  You seem a little guarded about saying you are satisfied with [counsel's] handling of your case?
>
> A. (Mr. Brown.)  Well, when I hired him I had a good faith hope of getting out of this.  I didn't feel like at the time that I was really guilty of any crime.  *Since it's been explained to me and shown to me in the law I found out I am guilty of a crime.*
>
> Q. [By the Court.]  You mean he showed you something you something you didn't want to know about?
>
> A. (Mr. Brown.)  He showed me something I did not know.
>
> ....
>
> A. [Counsel for Brown.]  I think what Mr. Brown is trying to say when he came to me he admitted the elements of the structuring offense, but he was not aware, until he was indicted, that it was a crime and *he did not believe he had committed a crime until I showed him the law and the case law and specifically gave him a copy of the most recent decision of the Eleventh Circuit, in which I believe the last name of the defendant in that case is Brown,* which dealt with the criminal offense of structuring and it basically says you are guilty of the offense of structuring if you intended to do what he did with knowledge of the reporting requirements and you structured a financial transaction to avoid the reporting requirements that was sufficient under the law.  I think that's what Mr. Brown means when he says that *he didn't think he did anything wrong, but now his eyes have been opened.*

(emphasis added).

As it later turned out, the eyes that needed opening were those of this Court.  Fourteen months after Neal Brown entered his guilty plea, the Supreme Court issued its decision in *Ratzlaf v. United States,* 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).  In that decision, the Supreme Court held that the willfulness requirement contained in the criminal enforcement provision then applicable to § 5324 required the government to prove that "the defendant acted with knowledge that his conduct was unlawful."  *Id.* at 137, 114 S.Ct. at 657.  *Ratzlaf* overruled this Court's prior decision in *United States v. Brown,* 954 F.2d 1563 (11th Cir.1992), which had held that "the prosecution need not prove the defendant was aware of the illegality of money structuring in order to convict the defendant of that offense," *id.* at 1568.[1]

---

[1]At the time of the Supreme Court's *Ratzlaf* decision, § 5324 was dependent upon the criminal enforcement provision contained in 31 U.S.C. § 5322.  After *Ratzlaf,* Congress amended § 5324

On September 1, 1994, Brown filed in the district court a *pro se* pleading entitled "Petition for Writ of Error Coram Nobis." In that pleading, Brown sought an order vacating his conviction and sentence on the ground that he had not entered his guilty plea knowingly and voluntarily.[2] Specifically, Brown contended that his guilty plea should be set aside because he had been misinformed about the essential elements of the crime to which he pleaded guilty.

The district court denied Brown's request to vacate his conviction and sentence "[f]or the reasons stated in the Government's responsive brief." In so doing, the district court adopted the government's position that the Supreme Court's decision in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), prohibited the district court from granting the relief requested, because *Brady* holds that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise," *id.* at 757, 90 S.Ct. at 1473. Citing our then-overruled 1992 *Brown* decision, the government contended that because binding circuit law in effect at the time of the plea held that the government need *not* prove a defendant knew that his structuring activities were unlawful, Neal Brown's plea was sufficiently knowing and voluntary to satisfy constitutional requirements. The district court agreed.

Twenty-two days after the district court denied Brown's coram nobis petition, Brown, still acting *pro se,* filed a notice of appeal. Thereafter, this Court raised *sua sponte* the issue of whether we have jurisdiction over this case, in view of the fact that the notice of appeal was filed more than ten days after entry of the district court's order denying his petition. *See* Fed. R.App. P. 4(b). We then set the case for oral argument and appointed appellate counsel for Brown.

---

by giving it its own criminal enforcement provision. That amended provision does not include a separate requirement that the defendant act "willfully." *See* 31 U.S.C. § 5324. Thus, apparently the only mental state required under the new enforcement provision is a purpose to evade the reporting requirement. *See United States v. Vazquez,* 53 F.3d 1216, 1218 n. 2 (11th Cir.1995) (making the same observation). As in *Vazquez,* however, the amended provisions of § 5324 are not applicable to this case, which arose before the relevant amendments were enacted. *See id.*

[2] Brown's petition might be read to state additional grounds, such as ineffective assistance of counsel, in support of his requested relief. However, we need not reach any of those other issues.

## II. ISSUES AND APPLICABLE STANDARDS OF REVIEW

As a threshold matter, we must decide whether we have jurisdiction over this appeal. Because that legal question has been raised *sua sponte* by this Court on appeal, we decide it in the first instance. Assuming that we have jurisdiction, we must decide whether Brown entered his guilty plea knowingly and voluntarily. "The voluntariness of a guilty plea is a question of law reviewed *de novo*." *United States v. Bushert,* 997 F.2d 1343, 1352 (11th Cir.1993) (citing *Marshall v. Lonberger,* 459 U.S. 422, 431, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983)).

## III. JURISDICTION

Federal Rule of Appellate Procedure 4(b) provides criminal defendants with ten days to appeal following entry of the relevant judgment or order in the district court. *See* Fed. R.App. P. 4(b). If Rule 4(b) applies to this case, Brown's appeal was filed twelve days too late.

Brown contends that Rule 4(b) does not govern this case. Instead, he argues that his "Petition for Writ of Error Coram Nobis" should be construed as a motion to vacate his sentence under 28 U.S.C. § 2255. So construed, his appeal was timely filed, because Federal Rule of Appellate Procedure 4(a) provides inmates with sixty days to appeal the denial of a § 2255 motion. *See* Fed. R.App. P. 4(a).

We agree that Brown's coram nobis petition must be construed as a § 2255 motion. The writ of error coram nobis is an extraordinary writ, limited to cases in which "no statutory remedy is available or adequate." *Lowery v. United States,* 956 F.2d 227, 228-29 (11th Cir.1992) (citations and internal quotation marks omitted). As we have previously held, an available statutory habeas remedy precludes coram nobis relief. *Id.* If Brown was "in custody" within the meaning of § 2255 when he filed his appeal, then the statutory remedies of that provision were available to him, and coram nobis relief was unavailable as a matter of law.

When Brown filed his appeal, he was still serving the supervised release portion of his sentence. Although Brown was not physically in prison when his appeal was filed, he was still subject to the restrictions on liberty that accompany a term of supervised release. Supervised release carries with it the possibility of revocation and additional jail time. Therefore, we conclude that, as

a person serving a term of supervised release, Brown was "in custody" within the meaning of § 2255 when he filed his petition in the district court. *See Jones v. Cunningham,* 371 U.S. 236, 240-43, 83 S.Ct. 373, 376-77, 9 L.Ed.2d 285 (1963) (holding that paroled prisoner is in custody when the terms of his release impose "significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally"); *United States v. Essig,* 10 F.3d 968, 970 n. 3 (3d Cir.1993) (holding expressly that supervised release satisfies the "in custody" requirement of § 2255); *see also Dawson v. Scott,* 50 F.3d 884, 886 n. 2 (11th Cir.1995) (holding that a habeas appeal does not become moot merely because a prisoner is released from physical confinement to serve a term of supervised release, because supervised release is part of the sentence and carries liberty restrictions with it); *Kusay v. United States,* 62 F.3d 192, 193 (7th Cir.1995) (same).[3]

Because Brown was in custody within the meaning of § 2255 when he filed his petition in the district court, coram nobis relief was unavailable to him, and § 2255 was his exclusive remedy. Therefore, the question simplifies to whether Brown's petition should be treated as a § 2255 motion, despite the label that he attached to it. We readily conclude that it should be. Under well-settled principles in this circuit, *pro se* applications for post-conviction relief are to be liberally construed. *See, e.g., Diaz v. United States,* 930 F.2d 832, 834 (11th Cir.1991); *Allen v. United States,* 634 F.2d 316, 317 (5th Cir. Unit A Jan.1981). We have already held that pleadings erroneously styled as coram nobis petitions should be treated as § 2255 motions, and vice versa. *See Downs-Morgan v. United States,* 765 F.2d 1534, 1536 (11th Cir.1985) (construing coram nobis petition as § 2255 motion); *Scarborough v. United States,* 683 F.2d 1323, 1324 (11th Cir.1982) (same); *Granville v. United States,* 613 F.2d 125, 126 n. 1 (5th Cir.1980) (construing § 2255 motion as coram nobis petition); *Carbo v. United States,* 581 F.2d 91, 92 (5th Cir.1978) (same).[4]

---

[3]We note that the full expiration of Brown's sentence during the processing of this appeal does not moot this case, either. *See Carafas v. LaVallee,* 391 U.S. 234, 237-38, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968); *Minor v. Dugger,* 864 F.2d 124, 127 (11th Cir.1989); *Reed v. United States,* 471 F.2d 721, 722 (5th Cir.1973).

[4]We note that the nature of Brown's pleading must be determined as of the date it was filed. *Compare United States v. Swindall,* 107 F.3d 831, 833 (11th Cir.1997) (treating coram nobis

Accordingly, we construe Brown's coram nobis petition to be a § 2255 motion. As such, his appeal from the denial of relief was timely filed. *See* Fed. R.App. P. 4(a). We do have jurisdiction to decide this appeal and turn now to the merits.

## IV. ENTITLEMENT TO SECTION 2255 RELIEF

We address the merits of Brown's case in three steps. First, we review the bedrock constitutional principles governing the entry of a valid guilty plea and conclude that those principles require that a defendant be informed about the critical elements of the charged offense. Second, we consider whether the Supreme Court's decision in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), altered that fundamental requirement and conclude that it did not. Finally, we consider whether Brown's claim is barred under the retroactivity rules of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and conclude that it is not, because the Supreme Court's *Ratzlaf* decision merely construed the reach of a federal criminal statute and did not announce any new constitutional rules of criminal procedure.

### A. CONSTITUTIONALLY VALID GUILTY PLEAS MUST BE KNOWING AND VOLUNTARY

"The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." *Gaddy v. Linahan,* 780 F.2d 935, 943 (11th Cir.1986) (citation and footnote omitted). A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." *Henderson v. Morgan,* 426 U.S. 637, 644-45, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976) (footnote omitted).

Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:

---

petition filed after completion of sentence as a true coram nobis petition) *and Granville* 613 F.2d at 126 n. 1 (construing § 2255 motion filed after completion of sentence as coram nobis petition) *with Downs-Morgan,* 765 F.2d at 1536 (construing coram nobis petition as § 2255 motion where petitioner was in custody when pleading was filed despite fact that petitioner completed sentence during pendency of appeal). Accordingly, the full expiration of Brown's sentence during the pendency of this appeal has no bearing on the question of whether Brown's pleading should be construed as a coram nobis petition or as a § 2255 motion.

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, *see, e.g., Johnson v. Zerbst,* 304 U.S. 458, 464-465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 [ (1938) ], or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense. *Smith v. O'Grady,* 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 [ (1941) ].

*Henderson,* 426 U.S. at 645 n. 13, 96 S.Ct. at 2257 n. 13. As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.' " *Id.* at 645, 96 S.Ct. at 2257-58 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)).

A defendant does not receive "real notice" of the nature of the charge against him unless he is informed of the elements of the charged offense. As we have previously held:

> The defendant receives "real notice" of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements. This is so because a plea of guilty represents, in essence, an admission as to each and every element of the offense. In addition, the defendant should understand how his conduct satisfies those elements.

*Gaddy,* 780 F.2d at 943-44 (citations omitted); *see also Stano v. Dugger,* 921 F.2d 1125, 1142 (11th Cir.1991) (en banc) (recognizing that, prior to entering a guilty plea, a defendant must receive information on "the nature of the offense and the elements of the crime"). "At the very least, due process requires that the defendant, prior to tendering a plea of guilty, receive a description of the "critical elements' of the charged offense...." *Gaddy,* 780 F.2d at 945 (citation omitted).

The record makes clear—and the government does not dispute—that Brown was misinformed about the elements of the offense to which he pleaded guilty. In particular, Brown and his counsel stated in open court at the plea colloquy that Brown did not believe he was guilty of any crime, because he had not known at the time of his conduct that it was illegal to structure currency transactions. Brown was persuaded to plead guilty only after his counsel showed him a copy of our now-overruled decision in *United States v. Brown,* 954 F.2d 1563 (11th Cir.1992), which had

erroneously held that "the prosecution need not prove the defendant was aware of the illegality of money structuring in order to convict the defendant of that offense," *id.* at 1568. In view of those undisputed facts and the Supreme Court's subsequent decision in *Ratzlaf v. United States,* 510 U.S. 135, 136-37, 114 S.Ct. 655, 657, 126 L.Ed.2d 615 (1994), it is clear that Brown was not informed of the "*true* nature of the charge against him," *Smith,* 312 U.S. at 334, 61 S.Ct. at 574 (emphasis added). Instead, he was affirmatively *mis*informed about a " "critical element[ ]' of the charged offense," *Gaddy,* 780 F.2d at 945, and that misinformation caused him to plead guilty.

Because the misinformation Brown was given about one of the critical elements of the charge against him caused him to plead guilty, it necessarily follows that his guilty plea was not voluntary in a constitutional sense. Therefore, Brown is entitled to § 2255 relief unless some other constitutional principle saves the plea or unless an applicable retroactivity rule bars Brown from pressing his claim in a collateral attack on his conviction and sentence. We will explore each of those possibilities in turn.

### B. THE SUPREME COURT'S *BRADY* DECISION DOES NOT ABROGATE THE REQUIREMENT THAT GUILTY PLEAS MUST BE KNOWING AND VOLUNTARY

The government contends that Brown's guilty plea was sufficiently knowing and voluntary, even though he was misinformed about the elements of the charged offense, because the source of the misinformation was this Court's then-applicable *Brown* decision. For that proposition, the government relies on *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). We think the government misapprehends the Supreme Court's *Brady* decision.

*Brady* involved a petitioner who had pleaded guilty to a federal charge of kidnapping. *Id.* at 743, 90 S.Ct. at 1466. Under the law applicable when Brady entered his guilty plea, he could have been sentenced to death if his case had been tried to a jury and the jury had so recommended. *Id.* Apparently to escape the possibility of a death sentence, Brady elected to plead guilty. *Id.* Several years later, the Supreme Court struck down the death penalty provision of the kidnapping statute to which Brady had pleaded guilty, holding that that provision imposed an unconstitutional burden on the right to trial by jury. *United States v. Jackson,* 390 U.S. 570, 572, 88 S.Ct. 1209, 1211, 20 L.Ed.2d 138 (1968). Brady filed a § 2255 motion, claiming that his guilty plea had been

unconstitutionally coerced by the death penalty provision of the federal kidnapping statute. The district court denied relief, and the Tenth Circuit affirmed. *Brady,* 397 U.S. at 744-45, 90 S.Ct. at 1466-67.

The Supreme Court granted certiorari and affirmed the decision that Brady's guilty plea was voluntarily made. In so holding, the Court rejected the argument that Brady's guilty plea should be set aside on the ground that he had mistakenly concluded that the only way to avoid the possibility of a death sentence was to enter a guilty plea. Because of its importance, we quote the Supreme Court's reasoning at length:

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.
>
> The fact that Brady did not anticipate *United States v. Jackson, supra,* does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

*Id.* at 756-77, 90 S.Ct. at 1473 (citation omitted).

According to the government, *Brady* means that Brown's guilty plea merely rested on a "faulty premise" and that the plea is not subject to collateral attack because it was "intelligently made in the light of the then applicable law." We disagree. *Brady* did not undermine that "first and most universally recognized requirement of due process" that a guilty plea is not voluntary unless the defendant receives "real notice of the true nature of the charge against him." *Henderson,* 426 U.S. at 645, 96 S.Ct. at 2257 (citation and internal quotation marks omitted).

In *Brady,* there was no issue concerning whether the defendant had been adequately and

accurately informed of the elements of the charged offense. Brady's claim that his plea was constitutionally involuntary rested solely upon his misapprehension of the anticipated costs of not pleading guilty, *i.e.,* that he would face the possibility of the death penalty unless he pleaded guilty. In light of the Supreme Court's subsequent *Jackson* decision, that assessment was wrong, because Brady would have been able to avoid the death penalty in any event (provided, of course, that he had not been executed in the interim). In the Supreme Court's words, Brady misapprehended "the likely penalties attached to alternative courses of action." *Id.* at 757, 90 S.Ct. at 1473. Unlike Brown in the present case, Brady did not misapprehend any element of the crime with which he was charged.

Essentially, the Supreme Court's *Brady* decision stands for the proposition that the Constitution is not violated by the consequences of strategic miscalculations concerning the evidentiary strength of the government's case or concerning the penalties that may be imposed upon conviction. Brady's strategic miscalculations did "not impugn the truth or reliability of his plea" in which he admitted that "he committed the act with which he [was] charged," *id.* at 757, 90 S.Ct. at 1473-74, because "he was made aware of the charge against him" and "was aware of precisely what he was doing when he admitted [commission of the crime]," *id.* at 756, 90 S.Ct. at 1473. By contrast, in this case, Brown was made aware of the true nature of the charges against him only *after* he had entered his plea, when the Supreme Court decided *Ratzlaf.* Unlike Brady's strategic miscalculations, Brown's misapprehension concerning the critical *elements* of his charged offense substantially undermines the reliability of his plea. Brown has never admitted all the elements of the crime with which he was charged.[5]

---

[5]We note that Brown's plea also stands in contrast to a plea made pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), in which a defendant permits judgment to be entered against him on an intelligent plea of guilty accompanied by a claim of innocence. Even an *Alford* plea requires that the defendant's legal admission of guilt be entered "voluntarily, knowingly, and understandingly." *Id.* at 37, 91 S.Ct. at 167. As Justice White explained in *Henderson:*

> *Alford* is based on the fact that the defendant could intelligently have concluded that, whether he believed himself to be innocent ... the State's case against him was so strong that he would have been convicted anyway.... Plainly, a defendant cannot "intelligently" reach that conclusion [to plead guilty] if he does not know the elements of the crime to which he is pleading and therefore does not know what the State has to prove; and his ignorant decision to plead guilty under such

The one critical element of the structuring offense as authoritatively defined by the Supreme Court that Brown has never admitted is that he "acted with knowledge that his conduct was unlawful," *Ratzlaf,* 510 U.S. at 137, 114 S.Ct. at 657. Because Brown was specifically and affirmatively misinformed that such knowledge was not an element of the crime, his guilty plea was made in ignorance of the "*true* nature of the charge against him," *Henderson,* 426 U.S. at 645, 96 S.Ct. at 2257 (emphasis added) (citation and internal quotation marks omitted). Accordingly, the rule of *Brady* does not govern this case, and the availability of § 2255 relief to Brown depends entirely upon whether *Ratzlaf* 's authoritative construction of the crime with which Brown was charged is applicable to his case. We turn now to that question.

## C. APPLICATION OF THE SUPREME COURT'S *RATZLAF* DECISION TO THIS CASE IS NOT BARRED BY THE *TEAGUE* DOCTRINE

The government contends that the retroactivity rules of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), prohibit Brown from relying on the Supreme Court's *Ratzlaf* decision in mounting a collateral attack on his conviction.[6] We disagree.

As the Supreme Court has explained, "*Teague* stands for the proposition that new constitutional rules of criminal procedure will not be announced or applied on collateral review." *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). However, the Supreme Court did not announce any new constitutional rules in its *Ratzlaf* decision, which does not even mention any provision of the Constitution. Instead, that decision interprets substantive provisions of a criminal statute, the one Brown was charged with violating.

---

circumstances is not a reliable indication that he is in fact guilty.

426 U.S. at 648 n. 1, 96 S.Ct. at 2259 n. 1 (White, J., concurring). We find that reasoning to be unassailable.

[6]The government's failure to raise a *Teague* argument in the district court does not deprive us of discretion to consider that argument on appeal. *See Spaziano v. Singletary,* 36 F.3d 1028, 1041-42 (11th Cir.1994). Additionally, we note that the government is not prohibited from raising a *Teague* argument merely because Brown was convicted in federal court instead of state court. In this circuit, it is now settled that "[w]hile the Supreme Court has applied the *Teague* rule only in collateral challenges to state convictions, *Teague* applies equally in collateral challenges to federal convictions." *United States v. Swindall,* 107 F.3d 831, 834 n. 4 (11th Cir.1997).

As we have held, the Supreme Court does "not express a new rule of constitutional law ... [when] it merely interpret[s] a substantive criminal statute using rules of statutory construction." *In re Blackshire,* 98 F.3d 1293, 1294 (11th Cir.1996) (citation omitted). That is precisely what happened in *Ratzlaf. See* 510 U.S. at 140-48, 114 S.Ct. at 659-63. By applying rules of statutory construction, and by examining relevant legislative history, the Supreme Court reached its authoritative interpretation of the willfulness requirement contained in 31 U.S.C. § 5322, the criminal enforcement provision then applicable to 31 U.S.C. § 5324. We agree with the Tenth Circuit that "*Ratzlaf* is a substantive non-constitutional decision concerning the reach of a federal statute." *United States v. Dashney,* 52 F.3d 298, 299 (10th Cir.1995). Accordingly, *Teague* does not bar Brown's claim for § 2255 relief.[7]

### V. CONCLUSION

Brown's guilty plea was not voluntary in the constitutional sense, because Brown was misinformed about the critical elements of the offense with which he was charged. The constitutional infirmity in the guilty plea is not excused by the fact that the misinformation supplied to Brown was the result of this Court's prior erroneous construction of the criminal statute at issue. Accordingly, the district court's order denying Brown's § 2255 petition styled as a "Petition for Writ of Error Coram Nobis" is REVERSED, and the case is REMANDED for proceedings consistent with this opinion.

Of course, the government is not bound by Brown's contention that he did not know that currency structuring was illegal, and it remains free to prosecute him for that charge on remand. If the government does so successfully, consistent with *Ratzlaf,* it will have established Brown's guilt

---

[7]The government does not contend that any nonretroactivity principles other than those embodied in the *Teague* doctrine might be applicable in these circumstances, and accordingly we express no view on that issue. We do note in passing that the one-year statute of limitations contained in 28 U.S.C. § 2255, as most recently amended, may bar future petitioners from attacking pre-*Ratzlaf* guilty plea convictions. The government wisely has not suggested that that statute of limitations provision would apply to this case in which the collateral attack pleading was filed more than eighteen months before the provision was even enacted. *See Lindh v. Murphy,* , --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----, 1997 WL 338568 (June 23, 1997) (provisions of Antiterrorism and Effective Death Penalty Act of 1996 do not apply to cases in which petitions or motions were filed prior to its effective date).

of violating § 5324. What the government may not do is utilize an involuntary guilty plea to establish guilt.[8]

---

[8]We decline the government's invitation to advise it about whether the Double Jeopardy Clause bars prosecution of Brown for the two counts against him that the government voluntarily dismissed in the absence of a formal plea agreement. Unless the government actually attempts to prosecute Brown on those dismissed charges, that question is a purely hypothetical one which the Constitution prohibits us from answering. *See, e.g., Miller v. Federal Communications Comm'n,* 66 F.3d 1140, 1146 (11th Cir.1995) ("Article III of the Constitution limits the jurisdiction of the federal courts to actual "cases' or "controversies.' ").