IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 99-40527
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JODIE TIMOTHY PACKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(4:97-CV-138)
_____

September 11, 2000

Before  WOOD[*], DAVIS and BARKSDALE,  Circuit Judge.

PER CURIAM:[**]

Packer appeals from the district court's denial of his 28 U.S.C. § 2255 motion, in

which he alleged he was denied effective assistance of counsel because he was never

informed by his attorneys, the district court judge, or the government of the fact that the

_____

[*]Circuit Judge of the Seventh Circuit, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

government needed to prove that he had acted with the knowledge that his structuring of financial transactions was illegal, an essential element of 31 U.S.C. §§ 5324(3) and 5322(a) offenses as stated by the Supreme Court in *Ratzlaf v. United States*, 510 U.S. 135 (1994). We affirm the district court's judgment for the following reasons.

Ineffective assistance of counsel claims, which contain mixed questions of law and fact, are reviewed *de novo*. *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994). The Court in *Ratzlaf* held that a defendant may be convicted of violating §§ 5322(a) and 5324(3) only upon a showing that the defendant "willfully" violated anti-structuring laws. 510 U.S. at 136-38. The government must "prove that the defendant acted with knowledge that his conduct was unlawful" in order to prove a "willful" violation. *Id.* at 137. A finding of the requisite knowledge may be made "by drawing reasonable inferences from the evidence of defendant's conduct . . . ." *Id.* at 149 n.19.

Packer points to *United States v. Brown*, 117 F.3d 471 (11th Cir. 1997), as analogous to his own case. We disagree. Brown had been persuaded to plead guilty only after being told that "the prosecution need not prove the defendant was aware of the illegality of money structuring in order to convict the defendant of that offense." *Id.* at 477 (citing *United States v. Brown*, 954 F.2d 1563, 1568 (11th Cir. 1992)). In his plea colloquy, Brown stated that he was not aware that he had committed a crime and he did not believe he had committed a crime. *Id.* at 473. As counsel for Brown explained, "[Brown] didn't think he had done anything wrong . . . ." *Id.* Brown was clearly misinformed about one of the essential elements of the charge against him. *Id.* Unlike

Brown, Packer was clearly informed that one of the elements of the structuring charges was that he "knowingly and <u>willfully</u> structured and assisted in the structuring of financial transactions," (emphasis added) and that this element "must be proven to the satisfaction of a jury beyond a reasonable doubt before you could be found guilty." There is no evidence in the record that Packer ever told his attorney that he was not aware his actions regarding the structuring charges were illegal.  At his plea colloquy, Packer repeatedly stated that he understood the elements, that he had reviewed them with his attorney, that he "knowingly and willfully" structured the transactions, and that he had no defense to the charges.

In proving knowledge of the law for a willful violation, evidence of structuring itself should be combined with evidence of a defendant's background to support an inference of knowledge of the law or evidence of a general consciousness of the illegality of the transactions.  *See United States v. Rodriguez*, 132 F.3d 208, 213 (5th Cir. 1997); *United States v. Pipkin*, 114 F.3d 528, 532-33 (5th Cir. 1997).  Although there is sufficient evidence to support the argument that Packer, with a business degree and graduate course work in business, as a sophisticated and successful businessman who owned two businesses, had the background to support an inference of knowledge of the law, there is no need to pursue this issue because there is ample evidence to show Packer knew of the illegality of his actions.

Packer stated that after his co-conspirator (the woman he was living with) was arrested for capital murder in 1988, she confessed to her participation in the murder.  She

was indicted in April 1990 but fled the United States prior to a court appearance scheduled for May 5, 1990.  Except for the Southern District of Texas structuring charge discussed later, Packer's structuring transactions all occurred in April 1990.  Packer went beyond ordinary lengths to hide his structuring; going to four different banks in four different areas of the city in one day, systematically breaking down combinations of checks into cashier's checks and cash.  *See Pipkin*, 114 F.3d at 533.  Packer stated he was breaking down the transactions to procure currency for his co-conspirator, "so that the government people would not know that she was actually gathering cash," and admitted, "I knew we were purposely avoiding the currency transaction requirements . . . ."  The record also indicates that Packer "admitted and accepted full responsibility for his own involvement in assisting [his co-conspirator] during her flight."  The evidence in the record is more than sufficient to substantiate Packer's "willful" *mens rea*, *see Rodriguez*, 132 F.3d at 213, which also shows that Packer had a greater motive in not reporting the transactions than merely that of avoiding the filing of a currency transaction report.  *See Pipkin*, 114 F.3d at 532-33.

The second count of structuring, from the Southern District, was actually a charge for evading a reporting requirement when Packer, a fugitive at that time, used a false name to report over $13,000 in cash when he crossed the border from Mexico into the United States in 1994.  Packer knew he was committing a crime by using a false name to report the currency and acted with the knowledge that his actions were illegal.

To prevail on a claim of ineffective assistance of counsel, Packer must show that (1) his counsel's actions fell below an objective standard of reasonableness and (2) the ineffective assistance of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). We review counsel's conduct with great deference, "strongly presuming that counsel has exercised reasonable professional judgment." *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986) (citation omitted). In the context of a guilty plea, prejudice is present if "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Based on Packer's own admissions, there is nothing to indicate that his counsel provided inadequate assistance prior to or during the plea proceedings or that Packer did not understand the contents of the plea agreement. *See United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995). Given the greater number of charges (in three different districts) which would have been brought had Packer gone to trial and the corresponding risk of a greater sentence if he had been convicted, it remains unlikely that Packer would have insisted on going to trial. *See United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996). Nor has Packer presented any evidence beyond his own mere speculation that the government would have agreed to dismiss all three of the structuring charges in order to secure his guilty plea. *See Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) ("To prevail on the prejudice prong of *Strickland*, there must be more than the mere possibility of a different outcome.") (citation omitted). Based on Packer's admittance that he knew

what he had done was illegal, there was no affirmative defense to the structuring charges

nor was there any prejudice stemming from the performance of Packer's counsel.

AFFIRMED.