[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  13-12918

_____

D.C. Docket No.  1:11-cr-00012-WLS-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS JOHNSON,

Defendant-Appellant.

_____

No.  13-12920

_____

D.C. Docket No.  1:11-cr-00012-WLS-TQL-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KELVIN JOHNSON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Georgia
_____

(March 12, 2015)

Before TJOFLAT and JILL PRYOR, Circuit Judges, and MOODY,[*] District
Judge.

PER CURIAM:

In this consolidated appeal, Carlos Johnson and Kelvin Johnson (collectively

the "Johnson brothers") challenge their life sentences, which were imposed after

they both pleaded guilty to one count of conspiracy to possess with intent to

distribute cocaine and "crack cocaine," in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(A)(ii), (iii), 846.  The Johnson brothers argue that their pleas were not

knowing and voluntary because the government withheld information prior to their

pleas that was later used to enhance their sentencing guidelines ranges.  As such,

the Johnson brothers contend that the sentence appeal waivers contained within

their plea agreements no longer apply, and they may challenge on appeal the

district court's decisions regarding the calculation of their guidelines ranges.  The

_____

[*]Honorable James S. Moody, Jr., United States District Judge for the Middle District of
Florida, sitting by designation.

Johnson brothers also contend that both of their counsel were ineffective for failing to impeach a witness during the sentencing hearing.

After careful review of the parties' briefs and the relevant portions of the record, and having had the benefit of oral argument, we affirm.

## I.  BACKGROUND

On March 9, 2011, a federal grand jury in the Middle District of Georgia indicted the Johnson brothers along with seventeen other defendants for their involvement in a large-scale drug operation in Southwest Georgia between 2008 and 2011.  The Johnson brothers were arrested on March 16, 2011.  On August 12, 2011, Carlos pleaded guilty pursuant to a plea agreement to one count of conspiracy to possess with intent to distribute cocaine and "crack cocaine," in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (iii), 846.[1]  Following his brother's plea, Kelvin pleaded guilty pursuant to a plea agreement to the same offense on August 17, 2011.

As part of their plea agreements, the Johnson brothers acknowledged that the district court was not bound by any estimate of the advisory sentencing range that they may have received from either their attorneys, the government, or the United States Probation Office.  The Johnson brothers also agreed that they would not be permitted to withdraw their pleas on the basis that they received an estimate of the

---

[1]Carlos also pleaded guilty to one forfeiture count, but he does not challenge that count on appeal.

advisory sentencing range that differed from the range computed by the Probation Office and accepted by the district court as the correct advisory sentencing range. The Johnson brothers averred that they understood that the district court would not be able to compute an advisory guideline sentencing range until the Probation Office prepared presentence investigation reports ("PSRs"). Finally, the Johnson brothers agreed that after a sentence was imposed by the district court, they waived their right to appeal that sentence unless certain enumerated exceptions were met. The district court reviewed each of these provisions with the Johnson brothers and confirmed that both understood these provisions.

After the Johnson brothers entered their guilty pleas, both entered into cooperation agreements with the government to assist in ongoing criminal investigations. The government sought release of the Johnson brothers prior to sentencing to facilitate their cooperation, and the Johnson brothers were furloughed for sixty days. After several continuances, sentencing was set for June 13, 2013.

Before the Johnson brothers were sentenced, the Probation Office prepared several PSRs. The initial PSR filed by the Probation Office on October 27, 2011, for Carlos calculated an adjusted total offense level of 39 and a criminal history category of IV, which resulted in an advisory guideline range of 360 months' to life imprisonment. Similarly, Kelvin's initial PSR filed on May 21, 2012, calculated an adjusted total offense level of 39 and a criminal history category of

III, which resulted in an advisory guideline range of 324 to 405 months' imprisonment.  On July 5, 2012, the Probation Office filed final PSRs for both Kelvin and Carlos, which contained the same guidelines calculations as the initial PSRs.

On June 10, 2013, the Probation Office filed revised final PSRs for the Johnson brothers, which added a two-level enhancement for bribery of a law enforcement officer in facilitation of the offense, increasing the Johnson brothers' adjusted total offense levels to 41.  The revision did not affect Carlos's advisory guideline range, but increased Kelvin's advisory guideline range to 360 months' to life imprisonment.  The Probation Office filed second revised final PSRs for the Johnson brothers on June 11, 2013, which, in addition to the bribery enhancement, reflected revocation of the Johnson brothers' three-level reduction for acceptance of responsibility due to illegal behavior while the Johnson brothers were furloughed.  Consequently, under the second revised final PSR, Carlos's amended adjusted total offense level was 43; with a criminal history category of IV, Carlos's amended advisory guideline range was life imprisonment.  Kelvin's amended adjusted total offense level was also 43; with a criminal history category of III, Kelvin's amended advisory guideline range was life imprisonment.

At the sentencing hearing on June 13, 2013, counsel for both Carlos and Kelvin objected to the two-level enhancement for bribery of a law enforcement

officer and to the denial of the reduction for acceptance of responsibility. The government produced three witnesses at the sentencing hearing in support of the bribery enhancement and the denial of credit for acceptance of responsibility: (1) William Franklin Green, a Drug Enforcement Agency Task Force Agent, (2) Fredrick Harris, and (3) Stephanie Rogers. Kelvin Johnson also testified during the sentencing hearing.

Agent Green testified that an individual named Jarrod Sims, who was cooperating with the authorities, informed law enforcement that Robert Nicholson, a member of the Pataula Drug Task Force, was selling information to the Johnson brothers about drug investigations. Sims informed Agent Green that he acted as a middleman to facilitate the transfer of information from Nicholson to the Johnson brothers. According to Agent Green, this information came to light in 2010, well before the Johnson brothers were arrested and entered their pleas. Nicholson was later fired and prosecuted for his conduct. Nicholson entered a plea agreement in 2012, in which he agreed as a basis for the plea that he sold information through Sims to the Johnson brothers. Agent Green also confirmed that the Johnson brothers were released on furlough to aid the authorities in investigating dog fighting in Alabama. At no time were the Johnson brothers requested to assist the authorities by buying or selling drugs.

6

Next, Fredrick Harris, who was arrested about a year after the Johnson brothers for his involvement in the conspiracy, testified that he and a cousin of the Johnson brothers purchased drugs on nine or ten occasions from the Johnson brothers while they were on furlough cooperating with the government. He also testified that he and his brother purchased drugs from Carlos on eight or nine occasions while Carlos was detained by calling him on a cell phone. According to Harris, Carlos then directed Stephanie Rogers to deliver the drugs on his behalf. Stephanie Rogers, the Johnson brothers' aunt, testified that she transported drugs for Carlos while he was furloughed. She also stated that she delivered drugs to Carlos and Kelvin in Alabama and that she was usually paid by Carlos, but she admitted that on one occasion she was paid partially by Kelvin. She denied any involvement with Fredrick Harris.

Finally, Kelvin testified. He denied participating in illegal activity while on furlough. He explained that he gave Rogers money, but that it was not for drugs. He also stated that Carlos did not participate in illegal activity while furloughed. On cross examination, Kelvin admitted to using a cell phone while incarcerated.

After hearing the evidence, the district court overruled the objections, accepted the guidelines calculations as presented in the second final revised PSRs, and sentenced both Carlos and Kelvin to life imprisonment. This consolidated appeal ensued.

7

## II.  DISCUSSION

### A. The Knowing and Voluntary Nature of the Pleas

The crux of this appeal is whether the Johnson brothers' pleas were knowing and voluntary.  If they were knowing and voluntary, then their arguments regarding the district court's calculation of their guidelines range would be precluded by the valid sentence appeal waivers contained in their plea agreements.[2] The Johnson brothers argue that their pleas were not knowing and voluntary because the government withheld information regarding their bribery of law enforcement officer Robert Nicholson, which was later used to apply a two-level enhancement in calculating their guidelines sentencing ranges.

Where, as here, a defendant fails to preserve a challenge to the voluntariness of a guilty plea, we review only for plain error.[3] *See United States v. Moriarty*, 429 F.3d 1012, 1018-19 (11th Cir. 2005).  Plain error exists if the defendant can show (1) error, (2) that is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005).  To establish

---

[2]Namely, the Johnson brothers contend that the district court erred in applying the two-level bribery enhancement and in denying credit for acceptance of responsibility.

[3]The Johnson brothers could have challenged the voluntariness of their guilty pleas in the district court by filing motions to withdraw their pleas.

plain error regarding the voluntariness of a guilty plea, a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

"A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." *United States v. Brown*, 117 F.3d 471, 476 (11th Cir. 1997) (citation and internal quotation marks omitted). In ensuring that a plea is knowing and voluntary in the "constitutional sense," the district court has an obligation to establish that (1) the plea is free from coercion, (2) the defendant understands the nature of the charges, and (3) the defendant understands the consequences of his plea. *See United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000); *see also* Fed. R. Crim. P. 11(b)(2) ("Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).").

The Johnson brothers have failed to show that their pleas were not knowing and voluntary. The plea agreements and a transcript of the change of plea hearing demonstrate that the Johnson brothers both averred that their pleas were entered free from coercion and that they understood the charges against them and the nature of the constitutional rights they were waiving. The district court also discussed with both Carlos and Kelvin the consequences of their pleas. Moreover,

9

the Johnson brothers were both explicitly informed by the district court during the change of plea hearing and by the plea agreements themselves that their guideline ranges could be different than the ranges currently estimated by the government, their attorneys, or the Probation Office.

Although the Johnson brothers contend that the government had an obligation to inform them of all facts of which they were aware that could be used to enhance their guidelines sentencing ranges, they offer no support for this proposition. And, in fact, such an obligation would be overly burdensome on the government and would undermine the goals of the plea bargaining process. *Cf. United States v. Ruiz*, 536 U.S. 622, 631 (2002) (stating that "a constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea, could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice"). Regardless, even if the government provided this information to the Johnson brothers, the government would not have been able to identify or predict whether the Probation Office would use the conduct in preparing the Johnson brothers' PSRs. *See United States v. Behr*, 93 F.3d 764, 766 (11th Cir. 1996).

More important, the government's withholding of this information does not affect the knowing and voluntary nature of the Johnson brothers' pleas. First, the

bribery information does not relate to their convictions.  Rather, it only affects the potential length of their sentences.  Second, while "the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be[,] . . . the Constitution does not require the prosecutor to share all useful information with the defendant."  *Ruiz*, 536 U.S. at 629.  The Constitution requires only that a guilty plea be knowing and voluntary; not that it be fully informed.  Thus, we conclude that the Johnson brothers' pleas were knowing and voluntary.

Because the Johnson brothers' pleas were knowing and voluntary, the sentence appeal waivers contained within their plea agreements remain valid and enforceable.  Accordingly, the Johnson brothers may not challenge on appeal the district court's calculations regarding their guidelines ranges.

## B.  Ineffective Assistance of Counsel

The Johnson brothers also argue that their counsel were ineffective because they failed to produce evidence to impeach Stephanie Rogers during the sentencing hearing.  Specifically, the Johnson brothers contend that counsel should have produced the arrest records of T'Michael Jones, from whom Rogers claims to have received drugs to transport to the Johnson brothers while they were furloughed.  According to the Johnson brothers, Jones's arrest records would show that Jones was incarcerated at the time of the alleged conduct and would therefore cast doubt

11

upon Rogers's credibility. Although the sentence appeal waivers executed by the Johnson brothers do not preclude claims of ineffective assistance of counsel, we will generally not review a claim of ineffective assistance of counsel raised on direct appeal where the district court neither addressed the claim nor developed a sufficient factual record. *See United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002). "If the record is sufficiently developed, however, this court will consider an ineffective assistance of counsel claim on direct appeal." *Id.* As to this claim for ineffective assistance of counsel, the record is sufficiently developed.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Id.* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds." (internal quotation marks omitted)). "[C]ounsel is

strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

As to the performance of Carlos's counsel, he was not ineffective in failing to impeach Rogers during the sentencing hearing. Even if the testimony of Rogers was impugned, the testimony of Fredrick Harris directly implicated Carlos in illegal activity while he was on furlough. In denying Carlos the reduction for acceptance of responsibility, the district court specifically noted that it found the testimony of Rogers and Harris credible despite their discrepancies, but it also stated that Harris's testimony alone implicated Carlos in the illegal activity. Thus, because no reasonable probability exists that the outcome would have been different for Carlos if his counsel impeached Rogers, his counsel was not ineffective.

Similarly, Kelvin's counsel was not ineffective in failing to impeach Rogers. Kelvin's counsel did not cross examine Rogers. Rather, Kelvin's counsel argued that the testimony of Rogers and Harris implicated only Carlos. Impeaching Rogers's testimony was not essential to that strategy. Also, Kelvin himself testified and stated that he did not participate in illegal activity while on furlough. Through Kelvin's testimony, which contradicted that of Rogers's, Kelvin's counsel attempted to impeach Rogers's testimony, although not in the manner Kelvin

13

alleges would have been most successful.  This Court will not second guess the reasonable strategic decisions of counsel, and counsel's performance in this regard was not deficient.

Kelvin also cannot establish that the failure to impeach Rogers resulted in prejudice.  First, Harris testified that he purchased drugs from both Johnson brothers.  Second, Kelvin admitted that he used a cell phone while incarcerated; this behavior alone would have been sufficient to deny the reduction for acceptance of responsibility.  *See* 18 U.S.C. § 1791(d)(1)(F) (prohibiting the possession of contraband, which includes a "phone or other device," while in prison).  Therefore, even without the testimony of Rogers, the district court had sufficient evidence on which to base its denial of the reduction for acceptance of responsibility.  Accordingly, Kelvin's counsel was not ineffective.

## III.  CONCLUSION

The convictions and sentences of Carlos Johnson and Kelvin Johnson are affirmed.

**AFFIRMED.**

14