[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13095
Non-Argument Calendar
_____

D.C. Docket No. 9:12-cr-80226-KAM-1


UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

versus

SONNY AUSTIN RAMDEO,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 14, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

Sonny Ramdeo pled guilty to charges of wire fraud and money laundering, *see* 18 U.S.C. §§ 1343 & 1956(a)(1)(B)(i), in connection with a scheme to defraud his employer and divert more than $20 million in corporate funds for his own use. On appeal, Mr. Ramdeo argues that the district court erred in (1) denying his motion to withdraw his guilty plea; (2) calculating the amount of restitution; (3) imposing offense level enhancements for obstruction of justice and for the use of sophisticated means; and (4) denying his request for a downward adjustment to his sentence for acceptance of responsibility. Following review of the record on the parties' briefs, we affirm.

# I

## A

Beginning in early 2005, Mr. Ramdeo served as the payroll manager at Promise Health Care, Inc., a company dedicated to providing management services to hospitals throughout the United States. He oversaw the payment of wages and related payroll taxes for the company.

Around January of 2010, the owners of Promise were informed that they would be personally liable for missed payroll tax payments and any accrued interest and penalties. To execute the proper payments, Promise used Ceridian Corporation, an independent payroll company that it had hired in October of 2006

to complete its payroll processing.  Mr. Ramdeo acted as the liaison between the two companies.  Promise used Ceridian's services until about February of 2010.

After that, the process for making payments to the proper taxing authorities was brought in-house at Promise.  During an audit period, Mr. Ramdeo suggested that Promise hire PayServ Tax, Inc., a company he represented was one of Ceridian's subsidiaries and worked with companies to help them make timely tax payments in periods of distress.  In fact, PayServ was Mr. Ramdeo's company and it had no connection to Ceridian.[1]

At Mr. Ramdeo's direction, Promise transferred funds to PayServ for tax payment purposes and for fees as payment for PayServ's services.  According to PayServ's records, Promise was the company's only client and the funds in its account were attributed only to Promise's transfers.  No official contract between Promise and PayServ existed in Promise's records.

For almost two years, Mr. Ramdeo deposited into PayServ's account funds that were supposed to be used to pay Promise's payroll taxes.  He diverted them to start and operate his own charter airline company, EZ-Jet GT, Inc.  PayServ, through Mr. Ramdeo, transferred more than $20 million to EZ-Jet.  To conceal his scheme, Mr. Ramdeo transferred funds from an EZ-Jet account at PNC Bank to another EZ-Jet account at Valley National Bank.

---

[1] At various times, PayServ Tax, Inc. was also known as PayService Tax, Inc., PayTax Service, and Pay-Tax.

In October of 2012, Promise's auditors requested additional information concerning PayServ. When Mr. Ramdeo found out about this, he created a website for the company, linked it to Ceridian's website, and created an email from a fake email address to himself confirming that PayServ was collecting and disbursing payroll taxes on Promise's behalf. That same day, Mr. Ramdeo left Promise's office and never returned. Authorities arrested him in December of 2012.

**B**

That same month, a federal grand jury indicted Mr. Ramdeo and charged him with three counts of wire fraud, in violation of § 1343. In January of 2013, the district court appointed Assistant Federal Public Defender Robert Adler to represent Mr. Ramdeo. By the end of the month, Mr. Ramdeo had hired private counsel, Valentin Rodriguez, and Mr. Adler's representation ended.

In April of 2013, the grand jury returned a superseding indictment, which added three counts of money laundering, in violation of § 1956(a)(1)(B)(i) (Counts 4-6) to the wire fraud counts in the initial indictment (Counts 1-3) and added three new counts of wire fraud (Counts 7-9). Mr. Ramdeo pled not guilty to all counts.

Shortly thereafter, in May of 2013, Mr. Ramdeo and his counsel, Mr. Rodriguez, filed a joint motion for substitution of counsel and asked the district court to allow Mr. Rodriguez to be replaced by attorney Alan Diamond

4

from the Funk, Szachacz & Diamond, LLC law firm.  The district court granted the motion.

While represented by Mr. Diamond, Mr. Ramdeo decided to plead guilty to Counts 1 and 4 of the superseding indictment. At the change of plea hearing, Mr. Diamond informed the district court that right before the hearing, Mr. Ramdeo said that he did not want to enter a change of plea, that he wanted a continuance to be "more prepared for trial," and that he no longer wanted to be represented by Mr. Diamond.  After a recess, Mr. Ramdeo returned and pled guilty to Counts 1 and 4.

During the plea colloquy, Mr. Ramdeo stated that he believed Mr. Diamond had done everything he could to defend him in the case.  He also acknowledged that Mr. Diamond had reviewed the superseding indictment, the evidence that the government intended to present at trial, and possible defenses with him.  He further stated under oath that had he read the plea agreement and signed it freely and voluntarily.  The district court explained the sentencing process, and Mr. Ramdeo said that he understood that the district court would decide the actual sentence, and that any disagreement with the sentence would not be a basis for withdrawal of plea.  He also said he understood that the district court would decide the amount of loss.

About a month after the change of plea hearing, Mr. Ramdeo requested that an assistant federal public defender be reappointed to represent him, and Mr. Diamond and his firm moved to withdraw as counsel. After holding a hearing on the issue, the district court granted the motion, and reappointed Mr. Adler as counsel.

Shortly thereafter, Mr. Ramdeo communicated to Mr. Adler that he wanted to move to withdraw his plea, but Mr. Adler believed this would create a conflict of interest. So, in January of 2014, Mr. Adler moved to withdraw as counsel. The district court granted Mr. Adler's motion and appointed David Pleasanton to represent Mr. Ramdeo.

A few days later, Mr. Ramdeo moved *pro se* to dismiss the superseding indictment. The district court denied the motion without discussion and Mr. Ramdeo appealed. We dismissed the appeal for lack of jurisdiction.

Then, in February of 2014, Mr. Ramdeo filed a motion to withdraw his guilty plea. He claimed that his first two attorneys did not properly assist him and that Mr. Diamond and attorneys from his firm pressured him to take the plea deal and threatened to withdraw from the case if he did not plead guilty. He claimed that he did not know about the change of plea hearing until the day it took place, and that although he disagreed with what the district court was saying during the plea colloquy, he felt he had no choice but to agree. Mr. Ramdeo claimed he

6

attempted to contact Mr. Diamond after he pled guilty, but because Mr. Diamond did not respond fast enough, he filed his motion to appoint counsel.  Mr. Adler and Mr. Diamond testified at the hearing on the motion to withdraw guilty plea that they assisted Mr. Ramdeo and had significant conversations with him about the plea agreement and potential defense theories.

The district court denied Mr. Ramdeo's motion following an evidentiary hearing.  The district court concluded that Mr. Ramdeo did not file the motion in good faith and that on each of the core issues, Mr. Ramdeo's testimony was "false and misleading and advanced for the sole purpose of prevailing on his motion." The district court referred to Mr. Ramdeo's claims that none of his attorneys ever reviewed discovery or discussed potential defenses with him, or did anything to prepare his case for trial, as "blatant lies." The district court acknowledged that although Mr. Ramdeo was unsure about his plea at the start of the hearing, he was given the opportunity to reflect on his decision, and then freely and voluntarily went forward with the change of plea.  The district court also found that Mr. Ramdeo received close assistance from "extremely competent counsel," and that enough judicial resources had been expended on his case given the numerous hearings and attorney appointments. Although the government would not be prejudiced by a change in plea, that alone did not warrant granting the motion.

## C

The presentence investigation report concluded that the advisory guideline range for Mr. Ramdeo's offenses was 210 to 262 months and that the amount of loss was $23,472,948.32. The report recommended that Mr. Ramdeo receive a sophisticated means enhancement under U.S.S.G. § 2B1.1, and that he not be given a downward adjustment for acceptance of responsibility. The report also stated that there was no indication that Mr. Ramdeo's sentence was subject to an obstruction of justice enhancement.

Both the government and Mr. Ramdeo submitted objections to the report. In relevant part, Mr. Ramdeo objected to the amount of loss and the sophisticated means enhancement. The government objected to the report's failure to include an obstruction of justice enhancement because Mr. Ramdeo had allegedly made false statements and filed false documentation. The government also filed a motion to apply the obstruction enhancement. At the sentencing hearing, which took place over several days, the district court heard testimony and ruled on these issues.[2]

During sentencing, the district court heard evidence on the amount of loss, and found that a reasonable estimate was $22,357,771.79. The district court then reduced that number by $173,598.10, which was the amount Mr. Ramdeo charged

---

[2] At the beginning of the first day of the sentencing hearing, Mr. Ramdeo moved again to withdraw his guilty plea. The district court denied his motion, stating that it had previously considered and denied his request.

for the services PayServ provided to Promise, even though the district court did not think there was a justification for going above the salary Mr. Ramdeo was receiving as Promise's payroll director. The district court gave Mr. Ramdeo "the benefit of the doubt" and decided that Mr. Ramdeo may have provided a benefit to Promise for negotiating tax abatements and avoiding tax penalties, so it reduced the total loss amount by $742,000. After applying those reductions, the total amount of loss was $21,442,173. The district court determined that the restitution amount would equal the loss amount, even though it thought that the restitution amount should have been higher.

The government argued that an obstruction of justice sentencing enhancement was warranted because Mr. Ramdeo perjured himself and made misrepresentations to the district court in three instances: (1) when he testified at his plea withdrawal hearing; (2) when he testified at his detention hearing about the existence of a contract between PayServ and Promise; and (3) when he testified during his second bond hearing.

The district court ultimately determined that Mr. Ramdeo should receive the obstruction of justice enhancement. It relied on Mr. Ramdeo's testimony at two hearings to reach its decision. First, the district court referred back to its order on Mr. Ramdeo's motion to withdraw his guilty plea, where it found that Mr. Ramdeo had perjured himself during the hearing related to that motion in an attempt to

9

influence its decision.    Second, the district court found that Mr. Ramdeo's testimony regarding the existence of a contract between PayServ and Promise, which "mysteriously appeared" after Mr. Ramdeo claimed he was the only one who had access to it but could not find it, was intended to mislead the district court regarding a material matter before the magistrate judge, before whom he testified about the alleged contract.

The district court also adopted the recommendation of the presentence investigation report to include a sophisticated means enhancement.    The district court referenced the plea agreement, which stated that the parties had agreed to the enhancement.

Mr. Ramdeo requested an adjustment under U.S.S.G. § 3E1.1(a) for accepting responsibility at the hearing.    He submitted a letter of acceptance of responsibility to bolster his argument.    The district court found that Mr. Ramdeo did not merit a sentence reduction for several reasons: (1) the application notes for § 3E1.1 state that if an obstruction of justice enhancement has been issued under § 3C1.1, as it had been here, that ordinarily indicates that the defendant has not accepted responsibility for his conduct, and extraordinary circumstances did not exist to allow for both to exist in this case; (2) it was not convinced that Mr. Ramdeo "clearly admitted" to committing the crimes, given that after he pled guilty he spent years receding from that position and his letter of acceptance of

10

responsibility was "ambiguous"; and (3) Mr. Ramdeo's inconsistent conduct led the district court to believe his guilty plea and an acceptance of responsibility adjustment was not warranted.

In July of 2015, the district court sentenced Mr. Ramdeo to 240 months' imprisonment for both counts, to be served concurrently, three years of supervised release, an assessment of $200, and restitution in the amount of $21,442,173.

## II

Mr. Ramdeo appeals (a) the district court's denial of his motion to withdraw his guilty plea; (b) the district court's order of restitution; and (c) the district court's decision to impose enhancements for obstruction of justice and sophisticated means, and for not awarding an acceptance of responsibility adjustment.[3]

---

[3] Mr. Ramdeo's notice of appeal references several motions and orders that he does not discuss in his briefing. These include, among others (1) the order denying his *pro se* emergency motion to dismiss the indictments with prejudice; (2) the order denying his (a) *pro se* motion to compel discovery/for subpoena duces tecum; (b) *pro se* motion for a court order to permit inspection of evidence; (c) *pro se* motion for production of statements and reports for sentencing; (d) *pro se* objection to evidence government intends to use at sentencing and additional objections to presentencing report; and (3) the order denying his *pro se* motion to compel specific performance. However, we need not address these issues because Mr. Ramdeo has failed to present them on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("If an argument is not fully briefed . . . to the Circuit Court, evaluating its merits would be improper both because the appellants may control the issues they raise on appeal, and because the appellee would have no opportunity to respond to it.").

Mr. Ramdeo also refers to the several motions to withdraw his guilty plea and corresponding denials in a footnote of his initial brief. *See* Appellant's Br. at 17, n.3. Although the orders are referenced in his notice of appeal, we do not address them here because Mr. Ramdeo's briefing indicates that he only takes issue with the district court's ruling on his first motion to withdraw

## A

Mr. Ramdeo's first contention is that the district court erred in denying his motion to withdraw his guilty plea. Mr. Ramdeo argues that none of his attorneys ever reviewed discovery with him, discussed potential defenses, or did anything to prepare for his case for trial, which left him with "little choice but to enter a guilty plea." Appellant's Br. at 44. He argues that he presented a "fair and just reason" for withdrawing his plea and that the district court incorrectly failed to credit his testimony. He maintains that his testimony was truthful, and that none of his attorneys thoroughly reviewed discovery or pursued exculpatory evidence on his behalf.

We review the denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Izquierdo*, 448 F.3d 1269, 1276 (11th Cir. 2006). We will reverse only if the district court's decision is arbitrary or unreasonable. *See id*. at 1276; *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988).

A defendant may withdraw his or her guilty plea after the court accepts the plea, but before a sentence is imposed, if the "defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The defendant has the burden of showing a "fair and just reason" for withdrawal. *See*

his plea, D.E. 93, which was filed by counsel, discussed at a hearing, and reviewed in detail by the district court. *See Access Now*, 385 F.3d at 1330.

*Izquierdo*, 448 F.3d at 1276.  *See also Buckles*, 843 F.2d at 471 (referring to the same language in then-Rule 32(d)).   A defendant does not have an absolute right to withdraw a guilty plea prior to the imposition of a sentence; that decision is left to the district court's discretion.  *See Buckles*, 843 F.2d at 471.

In determining whether a defendant has met his burden, the district court may consider the totality of circumstances and particular factors, such as (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant would be allowed to withdraw the plea.  *See id*. at 471–72.  If the first two factors favor the denial of the motion to withdraw the plea, however, the court does not have to give the third and fourth factors particular attention or weight.  *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987) (finding that the district court did not abuse its discretion in denying a motion to withdraw a guilty plea because the first two factors were met).  Additionally, the absence of a showing of prejudice to the government does not give the defendant an absolute right to withdraw a guilty plea when no credible reason is presented.  *United States v. Rasmussen*, 642 F.2d 165, 168 (5th Cir. 1981).

We conclude that the district court did not abuse its discretion in denying Mr. Ramdeo's motion to withdraw his plea.  The district court applied the *Buckles*

13

factors and assessed Mr. Ramdeo's motion in detail, providing him with an in-depth hearing on his motion after having had already provided him with time at his change of plea hearing to confer with his attorney about his decision to plead guilty. As Mr. Ramdeo recognizes, he never indicated to the district court that did not want to move forward with the guilty plea. *See* Appellant's Br. at 32 ("Sonny Ramdeo did not indicate at any time during the plea colloquy that he did not want to proceed.").

Moreover, there is a strong presumption that the statements made by Mr. Ramdeo under oath at the plea colloquy are true. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). The testimony from the change of plea hearing supports the district court's conclusion that Mr. Ramdeo received close assistance during the plea process and that he entered into the plea agreement knowingly and voluntarily. We must defer to the district court's credibility findings, and given the district court's strong opinion on Mr. Ramdeo's testimony regarding his attorneys' performance (e.g., that it consisted of "blatant lies" and was "false and misleading") and without more from Mr. Ramdeo, we affirm the district court's denial of Mr. Ramdeo's motion.

We note that Mr. Ramdeo was before the district court on multiple occasions and granted leave to change counsel numerous times. The district court "is in the best position to know the effect the withdrawal had on its resources," *United States*

14

*v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984), and we do not find a reason to disagree with the district court's assessment that enough judicial resources had been spent in this case. Finally, any failure by the government to show prejudice is not outweighed by the other factors, which indicate that the district court did not err in denying the motion to withdraw the guilty plea.

**B**

Mr. Ramdeo argues next that the district erred in calculating the amount of restitution.[4] He argues that the district court should have reduced the amount by the tax abatements PayServ obtained for Promise and that it should have considered his ability (or inability rather) to pay the amount ordered. We disagree.

We review a district court's factual findings as to the specific amount of restitution for clear error. *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000). The district court's refusal to consider Mr. Ramdeo's ability to pay restitution is a matter of statutory interpretation that we review de novo. *Id.*

Mr. Ramdeo incorrectly relies on the Victim and Witness Protection Act, 18 U.S.C. § 3663. Because of the crimes Mr. Ramdeo committed, the district court had to order restitution in accordance with the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A. *See* 18 U.S.C. § 3556; *United States v. Singletary*, 649 F.3d 1212, 1220 (11th Cir. 2011) (applying the MVRA in a wire fraud case). The

---

[4] Mr. Ramdeo argues that the district court erred in setting the amount of restitution above $24 million. The judgment, however, states that the amount of restitution is $21,442,173.

15

MVRA requires the district court to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *See* 18 U.S.C. § 3664(f)(1)(A).

Mr. Ramdeo's argument that the district court should have reduced the restitution amount by the tax abatements Promise received fails. Mr. Ramdeo does not explain how or why the district court erred.   In any event, it appears from the record that the district court *did* consider Mr. Ramdeo's argument, that the total loss amount be reduced by a tax abatement figure.   The district court gave Mr. Ramdeo "the benefit of the doubt" and reduced the loss amount—and as a result, the restitution amount—by $742,000 (in addition to another reduction the district court granted in an effort to be fair).

## C

Mr. Ramdeo also argues that the district court erred in applying various provisions of the sentencing guidelines.   He claims that the district court improperly applied the obstruction of justice and sophisticated means enhancements, and that it should have reduced his offense level based on his acceptance of responsibility.

When a district court imposes a sentencing guideline enhancement, we review the district court's factual findings for clear error and its application of the

16

guidelines to those facts de novo.  *See, e.g.*, *United States v. McGuinness*, 451 F.3d 1302, 1304 (11th Cir. 2006).   We will not disturb a district court's factual findings unless we are left with a definite and firm conviction that a mistake has been committed.  *See United States v. Clarke*, 562 F.3d 1158, 1165 (11th Cir. 2009).

We review the district court's determination as to an acceptance of responsibility reduction for clear error.  *See United States v. Carroll*, 6 F.3d 737, 739 (11th Cir. 1993).  Because a district court is in a unique position to evaluate whether a defendant accepted responsibility, this determination is entitled to great deference on review.  *See id.*

## 1

The sentencing guidelines provide for a two-level enhancement for obstructing or impeding the administration of justice where "the defendant willfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction."  *See* U.S.S.G. § 3C1.1.   The commentary to § 3C1.1 states that this enhancement is warranted when a defendant commits perjury.  *See* U.S.S.G. § 3C1.1, app. note 4(B).   On appeal, Mr. Ramdeo contends that he "did not obstruct justice and did not commit perjury with regards to a contract between Promise and PayServ."  Appellant's Br. at 47.

17

Without more, we cannot find that the district court committed clear error. The district court heard testimony and evidence from both sides, and made a finding that Mr. Ramdeo's claims about the contract that "mysteriously appeared" were "false and perjurious and [ ] intended to mislead." *See United States v. Dunnigan*, 507 U.S. 87, 95 (1993) ("The district court's determination that [an] enhancement is required is sufficient . . . if . . . the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury."); *United States v. Singh*, 291 F.3d 756, 763 (11th Cir. 2002) (applying *Dunnigan* in a case where the court found that the defendant perjured himself during his sentencing hearing).

Mr. Ramdeo did not contest the district court's finding as to his testimony at the plea withdrawal hearing in his initial brief. So, although he discussed it in his reply brief, the argument is not properly before us. *See Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003).

**2**

If an offense of fraud "otherwise involved sophisticated means," § 2B1.1(b)(10)(C) of the guidelines provides for a two-level enhancement. The commentary to this guideline provision defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." § 2B1.1(b)(10)(C), cmt. n. 9(B). It

further states that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." *Id.* It is sufficient for the totality of the scheme to be sophisticated, even if not every step is sophisticated. *See, e.g.*, *United States v. Feaster*, 798 F.3d 1374, 1381 (11th Cir. 2015).

Mr. Ramdeo argues that "[d]espite the [district] [c]ourt's findings, [he] did not utilize sophisticated means" because he was essentially completing "simple transfers" and "simply diverted payroll tax funds to the use of EZ-JET GT." Appellant's Br. at 48. He contends that the presentence investigation report confirms that his way of diverting funds was unsophisticated. *Id.*

In response, the government points out that Mr. Ramdeo stipulated to the sophisticated means enhancement in his plea agreement. The government argues further that Mr. Ramdeo's scheme was, in totality, sophisticated and presents several reasons why Mr. Ramdeo's crimes were completed via sophisticated means. Mr. Ramdeo (1) created a fictitious company that he claimed was associated with a legitimate business (Ceridian); (2) created a series of bank accounts to transfer funds for his personal use and to fund his airline company; (3) deflected requests from Promise employees and auditors regarding the ownership and facts of PayServ; and (4) diverted over $20 million over the course of his

19

scheme.  To that we add that Mr. Ramdeo created a website for PayServ and a fake email.

We affirm the district court's application of this sentencing enhancement. The district court was not bound by the parties' agreement enhancement, but the facts adequately demonstrate that the scheme, which involved a series of complex transactions and multiple bank accounts to conceal fraud (facts that Mr. Ramdeo stipulated to in his factual proffer), was sophisticated.

**3**

Finally, Mr. Ramdeo argues that the district court erred in failing to award him an acceptance of responsibility adjustment because he entered into a plea agreement with the government.  Interestingly, Mr. Ramdeo quotes a case in which we upheld a district court's decision not to grant a reduction because the defendants did not accept responsibility for their crimes.  *See Carroll*, 6 F.3d at 739.  That case recognized that "the reduction for acceptance of responsibility is a reward for those defendants who express genuine remorse for their criminal conduct."  *Id.* at 740.  Although Mr. Ramdeo presents his case as one in which there was an "affirmative acceptance of responsibility," the district court thoroughly explained on the record why it believed Mr. Ramdeo's actions did not warrant such an adjustment.

If a defendant "clearly demonstrates acceptance of responsibility for his offense," § 3E1.1(a) allows for a two-level decrease in offense level.  *See also United States v. McCarty*, 99 F.3d 383, 387 (11th Cir. 1996).  A defendant bears the burden of establishing his entitlement to an acceptance of responsibility reduction. *See id*.

A defendant who enters a guilty plea is not entitled to an adjustment under § 3E1.1 as a matter of right. *See* U.S.S.G. § 3E1.1, app. note 3.  Further, the act of moving to withdraw a guilty plea does not automatically preclude an offense level reduction. *See McCarty*, 99 F.3d at 387.

The district court did not commit clear error in deciding not to reduce Mr. Ramdeo's offense level for acceptance of responsibility.  Mr. Ramdeo's misleading and false testimony, which led to the obstruction of justice enhancement, generally contradicts an adjustment for acceptance of responsibility. *See* § 3E1.1, cmt. n. 4; *Singh*, 291 F.3d at 765.  And although Mr. Ramdeo pled guilty, his actions to recede from that position following his plea lead us to conclude that the district court did not commit clear error.

## III

We affirm the district court's (1) denial of Mr. Ramdeo's motion to withdraw his guilty plea; (2) calculation of the amount of restitution; (3)

imposition of sentencing enhancements for obstruction of justice and sophisticated means; and (4) denial of a downward adjustment for acceptance of responsibility.

**AFFIRMED.**