# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2024

Lyle W. Cayce
Clerk

————————

No. 23-10690

————————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

SHABBAR RAFIQ,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CR-243-3

_____

Before KING, JONES, and OLDHAM, *Circuit Judges*.

PER CURIAM:[*]

Shabbar Rafiq appeals from the district court's denial of his motion for a writ of *audita querela*. We AFFIRM.

## I.

In 2016, Rafiq pleaded guilty to conspiracy to distribute synthetic cannabinoids. *See* 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C). In a signed factual resume, Rafiq stipulated that certain assets (including bank deposits, a

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

significant amount of currency, a luxury sedan, and four gold bars) would be forfeited to the United States Government as proceeds of the offense. *See* 21 U.S.C. § 853(a). But when the presentence report listed that property as subject to forfeiture, defense counsel objected, arguing that the forfeited assets did not belong to Rafiq. The probation officer clarified that, while Rafiq had placed the items in others' names, he still had interests in and controlled the assets. Rafiq's counsel then withdrew all of his forfeiture-related objections.

Around the same time, the Government filed a motion for preliminary order of forfeiture. The Government sent the motion to Rafiq's trial counsel and requested a conference; in response, counsel stated that he was not Rafiq's "civil lawyer." The district court granted the motion. At the subsequent sentencing hearing, Rafiq's counsel appeared to argue an unrelated objection. The district court sentenced Rafiq to 144 months of imprisonment. The court also pronounced a judgment of forfeiture.

Rafiq appealed. With the aid of new counsel, he argued that the forfeiture order should be vacated because he was constructively denied counsel during his criminal forfeiture proceedings. *See United States v. Cronic*, 466 U.S. 648 (1984). A panel of this court affirmed the district court's judgment. *See United States v. Rafiq*, 745 F. App'x 241 (5th Cir. 2018) (per curiam).

Rafiq then filed a motion to vacate his sentence under 28 U.S.C. § 2255.. He argued, *inter alia*, that his judgment should be vacated because he was denied the right to counsel throughout his forfeiture proceedings. As a part of its response, the Government provided an affidavit from Rafiq's trial counsel, who stated that he "very clearly indicated" that he did not handle the "forfeiture matters." ROA.20-11168.145.

No. 23-10690

The district court denied Rafiq's § 2255 motion, and this court later affirmed that denial. *See United States v. Rafiq*, 2022 WL 2387348 (5th Cir. July 1, 2022). Later, this court denied Rafiq's application to file a second and successive § 2255 motion.

Finally, Rafiq filed a motion for writ of *audita querela* under the All Writs Act. *See* 28 U.S.C. § 1651(a). He claimed that the affidavit of his trial counsel demonstrates a denial of counsel during his forfeiture proceedings. Since the affidavit was submitted after his direct appeal, Rafiq argued that the initial judgment, though correct when rendered, became infirm through the later discovery of a Sixth Amendment violation. Rafiq asked the district court to grant his motion for writ of *audita querela* and overturn his earlier forfeiture judgment.

The district court denied Rafiq's motion for writ of *audita querela*. It reasoned that Rafiq "failed to identify a gap in the post-conviction relief system" because he "challenged the forfeiture order based on denial of counsel on direct appeal," noting that a forfeiture judgment "must be challenged on direct appeal or not at all." ROA.689–90 (quoting *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007) (internal quotation marks omitted)).

Rafiq timely appealed. Our review is de novo. *See United States v. Whitehead*, 449 F. App'x 326, 326 (5th Cir. 2011).

## II.

*Audita querela* is a common-law writ that dates back to the reign of Edward III. *See United States v. Miller*, 599 F.3d 484, 487 (5th Cir. 2010). There is some debate over the exact content of the writ. *Cf. Klapprott v. United States*, 335 U.S. 601, 614 (1949) (op. of Black, J.) ("[F]ew courts ever have agreed as to what circumstances would justify relief under these old remedies."). But it appears that the writ was used by judgment debtors to

escape the execution of a judgment on the grounds of post-judgment release or discharge. *See* 3 WILLIAM BLACKSTONE, COMMENTARIES *404–05; *see also Audita Querela*, BLACK'S LAW DICTIONARY (9th ed. 2009). It is distinguished from coram nobis, in that "a writ of *coram nobis* attacks a judgment that was infirm at the time it was rendered for reasons that later came to light, while a writ of *audita querela* is used to challenge a judgment that was correct at the time it was rendered but which is made infirm by matters that arose after its rendition." *Miller*, 599 F.3d at 487 (citation omitted); *see also United States v. Ayala*, 894 F.2d 425, 429 (D.C. Cir. 1990) (observing that "the distinction between *audita querela* and other forms of postconviction relief lies not in the *character* of the grounds for voiding the judgment, but rather in the *timing* of the occurrence of these grounds." (emphases in original and citations omitted)).

In 1948, Rule 60 of the Federal Rules of Civil Procedure formally abolished the writ of *audita querela* along with other common-law writs. *See* FED. R. CIV. P. 60(b) (1948). But in *United States v. Morgan*, 346 U.S. 502 (1954), the Supreme Court preserved the writ of coram nobis in the criminal setting by reference to the All Writs Act. *See* 28 U.S.C. § 1651(a). Neither the Supreme Court nor our court has held that *audita querela* likewise survives in criminal cases. *See Miller*, 599 F.3d at 487–88 ("[W]e have, as have several other circuits, acknowledged, with some reservation, that the writ of *audita querela might* also survive in criminal adjudications, if there is a gap for it to fill." (citations omitted)). *But see id.* at 488 ("We have yet to encounter a case that has required us to decide squarely whether or not the writ of *audita querela* survives in criminal cases.").

But even assuming *audita querela* is theoretically available in criminal cases, it provides a "slender reed upon which to lean." *United States v. Banda*, 1 F.3d 354, 356 (5th Cir. 1993). It theoretically might help a prisoner who brings (1) a legal objection that (2) arose after a judgment that (3) was

No. 23-10690

initially correct, assuming the (4) legal objection could not be brought through another post-conviction remedy. *See Miller*, 599 F.3d at 488; *United States v. Reyes*, 945 F.2d 862, 865–66 (5th Cir. 1991).

Plainly, Rafiq cannot meet that theoretical standard. Even if Rafiq was denied counsel during his forfeiture proceedings, no relevant "gap exists in the system of federal post-conviction remedies." *Miller*, 599 F.3d at 488 (citation omitted).

AFFIRMED.