[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11699

_____

SONNY AUSTIN RAMDEO,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 9:23-cv-80295-KAM,
9:12-cr-80226-KAM-1

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

GRANT, Circuit Judge:

Coram nobis, like other ancient writs, is rare—"extraordinary" even. But of the many barriers to issuing coram nobis, both substantive and procedural, a complete bar on seeking that writ while in custody is not one of them. For Sonny Ramdeo, who seeks coram nobis to escape restitution rather than imprisonment, the fact that he remains in custody does not mean he is ineligible for the writ.

## I.

While working as a payroll director for a hospital-management company called Promise Healthcare, Sonny Ramdeo recommended that Promise hire a firm called PayServ Tax to help facilitate tax payments. PayServ, he said, was a subsidiary of Ceridian Corporation, a company that Promise had hired before for similar services. Not true—PayServ was really Ramdeo's company and had no connection to Ceridian.

Promise, however, was none the wiser. Perhaps predictably, the funds Promise sent PayServ did not go to the IRS. Ramdeo instead used the money—all told, more than $20 million—to start a charter airline service.

But nothing lasts forever. Both Ramdeo's scheme and his airline met their end when Promise's auditors noticed problems and requested more information about PayServ. Despite

Ramdeo's best efforts to cover his tracks—including a fake website, a fake email address, and a fake email confirming that PayServ was collecting and disbursing payroll taxes for Promise—he was arrested, eventually pleading guilty to one count of wire fraud and one count of money laundering. The district court sentenced him to twenty years in prison, followed by three years of supervised release. It also ordered him to pay $21,442,173 in restitution.

Ramdeo unsuccessfully challenged his conviction and sentence, including the restitution amount, on direct appeal—but that was only the beginning of his journey through the judiciary. *United States v. Ramdeo*, 682 F. App'x 751, 752 (11th Cir. 2017) (unpublished). About six months after completing his direct appeal, Ramdeo again sought to challenge the restitution amount, this time seeking a writ of audita querela. That writ is used to challenge a judgment rendered infirm by matters "arising subsequent to the rendition of the judgment." *United States v. Holt*, 417 F.3d 1172, 1174 (11th Cir. 2005). The district court first recharacterized his petition as one for a writ of coram nobis and then rejected that petition. On appeal, this Court said that because Ramdeo's claim did "not justify a writ of audita querela," it would decline to address whether audita querela could *ever* be used to challenge a restitution order or whether coram nobis was "available under the particular facts" of his case. *See Ramdeo v. United States*, 760 F. App'x 900, 903 n.2 (11th Cir. 2019) (unpublished) (italics omitted).

While the audita querela petition was pending, Ramdeo also filed a 28 U.S.C. § 2255 petition, again attempting to contest (among other things) the amount of restitution set by the district court. The district court denied his motion as "frivolous" and "meritless"—at least under § 2255, which does not support restitution challenges. This Court granted a limited certificate of appealability and affirmed the district court's order rejecting Ramdeo's claims.[1] *See Ramdeo v. United States*, No. 21-10112, 2022 WL 3418674, at *2 (11th Cir. Aug. 17, 2022) (unpublished).

Ramdeo was still not finished. Roughly six months later, he again challenged his restitution order, this time with a pro se petition for a writ of error coram nobis. The new petition argued that the restitution order violated due process because of ineffective assistance of counsel and prosecutorial misconduct, plus new financial evidence showing that the restitution amount had been miscalculated.

Rather than addressing the merits of Ramdeo's fourth challenge to the restitution order, the district court denied the petition on the basis that prisoners in federal custody are "ineligible for coram nobis relief." Ramdeo now appeals.

---

[1] The only issue this Court reviewed was whether the district court erred by limiting the claims that Ramdeo could raise in his second amended § 2255 motion. We said no, citing "Ramdeo's abusive litigation habits." *Ramdeo*, 2022 WL 3418674, at *2.

## II.

We review a district court's denial of coram nobis relief for abuse of discretion. *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000). "A district court abuses its discretion when its ruling rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *United States v. Harding*, 104 F.4th 1291, 1295–96 (11th Cir. 2024) (quotation omitted).

## III.

As Ramdeo's consistent presence in the federal courts proves, a criminal conviction is not always the end of the line for defendants. To begin, direct appeal is always available absent a plea waiver or other affirmative choice by a defendant. *See* Fed. R. App. P. 3. Even after that, federal courts retain the authority to issue some forms of relief after appeal—though interests in finality and comity make it much harder to come by.

One way federal courts can offer relief is by issuing various common law writs "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." All Writs Act, 28 U.S.C. § 1651(a). But these writs operate only to "fill the interstices of the federal postconviction remedial framework" when no statutory authority covers the same ground. *Holt*, 417 F.3d at 1175 (quotation omitted); *see Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).

Habeas corpus has long been the most commonly known— and used—among these. In 1948, Congress passed statutes

codifying federal habeas authority.[2]  *See* 28 U.S.C. §§ 2241, 2254–55.  Still, that codification does not mean the All Writs Act is a dead letter.  "Habeas corpus may be the Great Writ, but it isn't the only writ."  *Rudolph v. United States*, 92 F.4th 1038, 1048 (11th Cir. 2024).  Two others that are relevant here are audita querela, the writ sought by Ramdeo in his earlier action, and coram nobis, the one he seeks here.  Neither, to be sure, is common in the modern era, but both remain available.

The distinction between the two is largely one of timing.  Audita querela, as we said above, is employed to attack the enforcement of a judgment that was "just and unimpeachable" when entered, but is no longer so.  *United States v. Miller*, 599 F.3d 484, 487 (5th Cir. 2010); *see also Holt*, 417 F.3d at 1174.  Coram nobis, on the other hand, is used to attack a judgment that "was infirm at the time it was rendered."  *Miller*, 599 F.3d at 487; *see also United States v. Reyes*, 945 F.2d 862, 863 n.1 (5th Cir. 1991).

The writ traces its origins to English courts, where it was "directed to a court for review of its own judgment and predicated

---

[2] One example is § 2255, the section Ramdeo tried to use in an earlier action.  That provision is "an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners."  *Jones v. Hendrix*, 599 U.S. 465, 472 (2023).  Section 2254 deals with habeas review for state prisoners, and § 2241 makes habeas available "for all those who are not challenging a criminal judgment, including those imprisoned in violation of federal law without any conviction at all."  Nancy J. King & Joseph L. Hoffmann, *Habeas for the Twenty-First Century: Uses, Abuses, and the Future of the Great Writ* 10 (2011).

23-11699                Opinion of the Court                7

on alleged errors of fact." *Coram Nobis*, Black's Law Dictionary (12th ed. 2024). Coram nobis enabled the "same court where the action was commenced and where the judgment was rendered to avoid the rigid strictures of judgment finality by correcting technical errors" like clerical mistakes. *United States v. Denedo*, 556 U.S. 904, 910–11 (2009) (quotation omitted).

The modern iteration of coram nobis, however, is "broader than its common-law predecessor." *Id.* at 911. The writ is no longer confined to technical errors—it extends to factual and legal errors too. *See id.* at 911–13. But the standard for relief is high. Whether factual or legal, only "errors of the most fundamental character" qualify.[3] *United States v. Morgan*, 346 U.S. 502, 512 (1954) (quotation omitted). In fact, review is "allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Id.* at 511. And because coram nobis is "a limited remedy of last resort," it "may not issue when alternative remedies, such as habeas corpus, are available." *United States v. Swindall*, 107 F.3d 831, 834 (11th Cir. 1997); *Denedo*, 556 U.S. at 911; *see United States v. Mills*, 221 F.3d 1201, 1204 (11th Cir. 2000). The Supreme Court has even said that "it is difficult to conceive of a situation in a federal criminal case today where that remedy would be necessary or appropriate." *United States v. Smith*, 331 U.S. 469,

---

[3] Fundamental errors may include constitutional violations—such as deprivation of counsel in violation of the Sixth Amendment—and jurisdictional defects. *See Morgan*, 346 U.S. at 512; *United States v. Peter*, 310 F.3d 709, 715 (11th Cir. 2002).

8                     Opinion of the Court                     23-11699

475–76 n.4 (1947).  The writ of coram nobis, in short, lives up to its characterization as extraordinary.

Here, though, the question is not whether Ramdeo's claims substantively reach the high standard required for the writ of coram nobis—it is whether he can file for the writ at all.  The government says no, arguing that it is "well established that coram nobis relief is generally not available to petitioners who are still in custody."  And to be fair, some of our precedents may suggest that—but only at first glance.

The government's primary authority is *United States v. Peter*, where we stated that "coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255."  310 F.3d 709, 712 (11th Cir. 2002).  The government also relies on *United States v. Garcia*—decided three years before *Peter*—which explained that "[c]oram nobis relief is unavailable to a person, such as the appellant, who is still in custody." 181 F.3d 1274, 1274 (11th Cir. 1999).  But a closer look at these cases and the earlier precedents that they draw from reveals not a categorical rule about custody, but a specific application of the more general rule: coram nobis relief is unavailable to prisoners in federal custody when other avenues of relief, such as § 2255, are available.

23-11699                Opinion of the Court                9

First, consider *Correa-Negron v. United States*, 473 F.2d 684 (5th Cir. 1973).[4] There, a federal prisoner petitioned for release from custody through coram nobis, and we explained that coram nobis "is only available to correct errors of the most fundamental character where the circumstances are compelling to achieve justice." *Id.* at 685. We went on to note that "coram nobis *normally* lies only when the petitioner is no longer in federal custody." *Id.* (emphasis added). But the reason? The writ is "open to a prisoner only when his statutory remedies are unavailable or inadequate." *Id.* And while "a petitioner is still in federal custody, relief from a prior invalid conviction must be sought by means of § 2255." *Id.* So after confirming that the petitioner's challenge was cognizable under § 2255, we affirmed the denial of the coram nobis petition. *Id.* What *Correa-Negron* established is that prisoners in custody can only challenge their custodial sentences under § 2255—a non-controversial point. But that has no bearing on restitution challenges because they do not qualify for relief under § 2255, whether the petitioner is in or out of custody. *See Blaik v. United States*, 161 F.3d 1341, 1342–43 (11th Cir. 1998).

Next came *United States v. Brown*, where we again concluded that coram nobis was not allowed because the petitioner, who sought release from custody, had a remedy under § 2255. 117 F.3d 471, 475 (11th Cir. 1997). "Because Brown was in custody within

---

[4] In *Bonner v. City of Prichard*, this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. *See* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

the meaning of § 2255 when he filed his petition in the district court," the "statutory remedies of that provision were available to him, and coram nobis relief was unavailable as a matter of law." *Id.*

And *Garcia* is more of the same. The petitioner there sought to vacate his sentence of custody through a writ of coram nobis. *Garcia*, 181 F.3d at 1274. But he had already attacked his sentence under § 2255 and lost. *Id.* We explained in a short per curiam opinion that the coram nobis petition was not the proper vehicle for his challenge. *Id.* at 1275. The opinion's statement that "[c]oram nobis relief is unavailable to a person, such as the appellant, who is still in custody" was perhaps too broad, but it cited only *Brown* in support, which made no such categorical rule. *Id.* at 1274. The court did not have before it, and did not consider, a case like this one where the in-custody petitioner did not seek release.

Finally, *Peter*—the government's chief authority—does not alter our conclusion. There, the petitioner sought to vacate his conviction after he had been released from custody, and the Court ultimately determined that coram nobis relief was available. *Peter*, 310 F.3d at 711, 716. The government overreads the opinion's statement that "coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255." *Id.* at 712. Yes, a petitioner seeking to *vacate his conviction*—something directly covered by § 2255—cannot use

23-11699               Opinion of the Court                    11

coram nobis unless he is out of custody and unable to use § 2255. But *Peter* says nothing about challenges to restitution orders, which cannot be brought under § 2255.

All that these precedents instruct, then, is that coram nobis relief is unavailable to an in-custody prisoner who seeks release from custody. Any such request may only come under § 2255. But the unavailability of coram nobis for release from custody says nothing about whether that writ can touch restitution. After all, common law writs like coram nobis remain available to "fill the interstices of the federal postconviction remedial framework." *Holt*, 417 F.3d at 1175 (quotation omitted). And we have been clear that § 2255 cannot be used to challenge restitution orders. *See Blaik*, 161 F.3d at 1342–43.

Why? One of the "technical limitations" of habeas corpus relief under § 2255 is that it can only be used to seek release *from custody*.[5] *Peter*, 310 F.3d at 712; *see Jones v. Cunningham*, 371 U.S. 236, 238 (1963). "A prisoner *in custody* under sentence of a court established by Act of Congress *claiming the right to be released* . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a) (emphasis added); *see also Rudolph*, 92 F.4th at 1044–45. Plus, habeas corpus cannot be extended to challenges to non-custodial aspects of a sentence, even when a non-custodial claim is brought in the same petition as a custodial one. *See Mamone v. United States*,

---

[5] Both parole and supervised release satisfy the "in custody" requirement. *See Jones*, 371 U.S. at 243; *Brown*, 117 F.3d at 475.

559 F.3d 1209, 1210–11 (11th Cir. 2009); *Blaik*, 161 F.3d at 1342–43. A reduction in restitution is plainly not a release from custody, so § 2255 cannot be used to attack "the restitution portion" of a sentence. *Blaik*, 161 F.3d at 1343. That means Ramdeo's present challenge is not cognizable under § 2255.

But the "unavailability of relief under § 2255 does not leave a deserving petitioner entirely without recourse." *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). Though a coram nobis petition and a petition under § 2255 are "of the same general character," § 2255 does not "cover the entire field of remedies in the nature of coram nobis in federal courts." *Morgan*, 346 U.S. at 505–06 n.4, 510 (italics omitted). In fact, "the writ of error coram nobis acts as an assurance that deserved relief will not be denied as a result of the technical limitations of other post-conviction remedies." *Peter*, 310 F.3d at 712. That's not to say we are certain that a writ of coram nobis can correct a restitution order—we have never decided that one way or the other. *See Arnaiz v. Warden, Fed. Satellite Low*, 594 F.3d 1326, 1329 n.3 (11th Cir. 2010). But what we can say is that it does not depend on whether the petitioner is in custody.

## IV.

This determination that coram nobis is not categorically barred for those in custody also does nothing to lower the high bar that any petitioner must clear to qualify for such relief. Because coram nobis is an extraordinary remedy, relief may only issue when (1) "no other remedy is available and the petitioner presents

sound reasons for failing to seek relief earlier"; and (2) "the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *Mills*, 221 F.3d at 1204; *Alikhani*, 200 F.3d at 734 (quotation omitted).

The government contends that even if being in custody does not thwart Ramdeo's coram nobis petition, his claim still fails on the merits. That may well be true. The government argues several alternative bases for affirming the district court: (1) Ramdeo failed to show there are or were no other available avenues for relief; (2) Ramdeo failed to show a fundamental error not previously put in issue or passed upon; (3) Ramdeo did not provide sound reasons for failing to seek coram nobis relief earlier; and (4) principles of finality counsel against affording Ramdeo this extraordinary relief. But the district court did not address any of these issues, and we decline to do so here. We conclude only that there is no out-of-custody requirement for prisoners challenging a non-custodial aspect of their sentence through the writ of error coram nobis.

★      ★      ★

We **VACATE** the district court's order and **REMAND** this case for further proceedings consistent with this opinion.